# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**ARMSTRONG HARDWOOD FLOORING COMPANY,**
**Employer Below, Petitioner**

**FILED**
June 22, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 15-0623** (BOR Appeal No. 2049973)
(Claim No. 2013020317)

**LESA G. RICHMOND,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Armstrong Hardwood Flooring Company, by Patricia E. McEnteer, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Lesa G. Richmond, by Robert L. Stultz, her attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated May 28, 2015, in which the Board reversed the October 27, 2014, Order of the Workers' Compensation Office of Judges and found the claim compensable for lateral epicondylitis. In its Order, the Office of Judges affirmed the claims administrator's December 19, 2013, decision to deny the request to add lateral epicondylitis as a compensable component of the claim. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Richmond, a nester for Armstrong Hardwood Flooring Company, filed a claim on October 2, 2012, alleging that she developed pain, discomfort, numbness, tingling, and soreness in her arms from working as a nester. Timothy Peasak, D.O., signed the form and diagnosed pain in the limb and carpal tunnel syndrome resulting from an occupational injury. Medical records from Dr. Peasak on October 3, 2012, showed that Ms. Richmond was examined for pain in her

1

right arm that had been occurring for one month. The pain started at the right shoulder and radiated into the elbow and wrist. Ms. Richmond also reported numbness and tingling in her right hand while working. Ms. Richmond's pain was worse during and after work. There was no known injury. Physical examination revealed full flexion and extension in both elbows. There was no pain with resisted rotation of the forearm. No pain was elicited on palpation and percussion of the cubital tunnel. There was no swelling or erythema noted in the elbow. Dr. Peasak diagnosed Ms. Richmond with pain in the limb and carpal tunnel syndrome. Ms. Richmond was advised to rest her arms for four days and take Motrin. If it did not improve with rest, a nerve conduction study would be appropriate.

On November 6, 2012, Ms. Richmond was evaluated by Mujib Rahman, M.D., and reported pain, numbness, and weakness in both arms for over a year. The pain had increased over the last several months. Ms. Richmond complained of right shoulder pain as well as numbness and tingling in the fingers of her right hand. She also had pain and numbness in the left hand, as well as some neck pain and intermittent mild headaches. Sensory examination revealed diminished sensation along the median nerve distribution. Dr. Rahman's diagnoses were carpal tunnel syndrome and tension headaches. Dr. Rahman recommended a nerve conduction study of her upper extremities. A nerve conduction study performed the next day revealed normal findings with no evidence of carpal tunnel syndrome, ulnar neuropathy, polyneuropathy, or cervical radiculopathy.

Bill Hennessey, M.D., performed an independent medical evaluation on May 9, 2013, in which he opined that there was no direct causal link between Ms. Richmond's employment and the onset of her hand and elbow symptoms. He noted that her symptoms did not manifest until her thirteenth year of employment. He also noted that despite being off work for four months, Ms. Richmond complained that her right elbow pain was just as severe as it had been when she was working. Dr. Hennessey opined that if her right elbow pain was truly work-related, it would have gone away after not working for four months. He further noted that she underwent electrodiagnostic testing performed by Dr. Rahman which revealed normal findings. Despite the normal nerve conduction study, Richard Topping, M.D., performed bilateral carpal tunnel surgery in February and March of 2013. Dr. Hennessey performed electrodiagnostic testing and an examination. He found no diagnosis and noted that every test was normal. He did not believe the elbow symptoms were caused by her work. He opined that she was at maximum medical improvement. The claims administrator denied the request to add lateral epicondylitis as a compensable component of the claim on December 19, 2013.

On February 11, 2014, Prasadarao Mukkamala, M.D., performed an independent medical evaluation in which he opined that there was no evidence of lateral epicondylitis and that even if the condition was present, it would not be due to her occupational activities. Physical examination revealed normal range of motion in all joints of both upper extremities, including the elbow. Ms. Richmond had tenderness over the right lateral epicondyle. Motor and sensory examination was normal, and there was no evidence of any neurological or vascular deficits in the upper extremities. Dr. Mukkamala found Ms. Richmond to have non-specific symptoms in both upper extremities that had mostly resolved. The claimant had reached maximum medical improvement.

On March 27, 2014, Dr. Topping testified in a hearing before the Office of Judges that he is an orthopedic surgeon who treated Ms. Richmond for carpal tunnel syndrome and lateral and medial epicondylitis. Ms. Richmond worked as a nester which required repetitive motion. Ms. Richmond began to notice tingling in her hands and elbow pain in September of 2012. Dr. Topping had performed surgery on Ms. Richmond for bilateral carpal tunnel syndrome and lateral and medial epicondylitis. Dr. Topping had recently seen Ms. Richmond for post-operative follow-up, and she was doing quite well. Dr. Topping explained that lateral epicondylitis is a chronic tendinopathy issue that is related to repeated activities, such as playing tennis or working as a nester. Dr. Topping could not recall obtaining any information about Ms. Richmond's recreational or non-occupational activities. He stated that typically epicondylitis will manifest within several months of the repetitive-use activity. However, some people have it for years and become more susceptible as they age. Although most of the time an individual's symptoms would be expected to improve if they were removed from the repetitive activity, this is not always the case. Dr. Topping opined to a reasonable degree of medical certainty that Ms. Richmond's right lateral epicondylitis was related to her employment as a nester.

The Office of Judges found that Ms. Richmond failed to establish that she suffered from lateral epicondylitis or that she developed it in the course of and as a result of her employment. The Office of Judges found that Dr. Topping was the only physician of record to diagnose lateral epicondylitis. After her injury, she was seen by Dr. Peasak and Dr. Rahman, and neither physician found that she suffered from lateral epicondylitis. Thereafter, she had independent medical evaluations by both Dr. Mukkamala and Dr. Hennessey. Neither physician found evidence of lateral epicondylitis. Based on the many different reports finding no lateral epicondylitis, the Office of Judges found that Ms. Richmond failed to meet her burden of proof to show that the condition developed in the course of and as a result of her employment.

The Board of Review adopted the findings of the Office of Judges and reversed its Order. The Board of Review noted that the claim was held compensable for bilateral carpal tunnel syndrome. The Board of Review examined Ms. Richmond's job duties. As a nester she was required to apply putty to boards and move them on a frequent basis. According to the Board of Review it was heavy work. The Board of Review also found her testimony persuasive. During her thirteen years of work, she had aches and pains in her wrists and elbows. Then her condition continuously worsened over a period of a couple of months. Dr. Topping began treating her in December of 2012 and he performed surgery on her elbow on March 5, 2014. He requested that lateral epicondylitis be added as a compensable component of the claim. He explained the relationship of the condition to Ms. Richmond's work noting it was a repetitive use injury and her work duty was repetitive. The Board of Review found that Dr. Topping believed, within a reasonable degree of medical certainty, that her lateral epicondylitis was related to her work as a nester. After review, we agree with the Board of Review. The weight of the evidence supports the finding that Ms. Richmond developed lateral epicondylitis in the course of and as a result of her employment.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous

conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 22, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II